UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CATHIE S. OTTINGER,

    Plaintiff,

    v.

PRUDENTIAL INSURANCE COMPANY
OF AMERICA,

    Defendant.

Case No. 15-cv-522-JPG-PMF

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Prudential Insurance Company of America's ("Prudential") motion for judgment on the pleadings (Doc. 17). Plaintiff Cathie S. Ottinger ("Ottinger") has responded to the motion (Doc. 20), and Prudential has replied to that response (Doc. 21).

**I.  Judgment on the Pleadings Standard**

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is governed by the same standards as a Rule 12(b)(6) motion to dismiss for failure to state a claim, that is, whether the pleadings contain facts that allow the reasonable inference that the defendant is liable for the misconduct alleged. *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). In ruling on a motion for judgment on the pleadings, the Court considers the complaint, answer and any written instruments attached to those pleadings, accepts all well-pleaded allegations in the complaint as true and draws all inferences in favor of the plaintiff. *See Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007); *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

**II.     Facts**

As a preliminary matter, a number of the facts relevant to this case are evidenced by documents filed in Ottinger's Chapter 13 bankruptcy proceeding, Case No. 14-30302-lgk (Bankr. S.D. Ill. Feb. 28, 2014). Ordinarily, when considering a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings, the Court may not consider matters outside the pleadings unless it converts the motion to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). There is an exception to this rule, however, when the additional material is something of which the Court may take judicial notice. *See Menominee Indian Tribe of Wisc. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). The Court may take judicial notice of public records, *see Pugh v. Tribune Co.*, 521 F.3d 686, 691 n. 2 (7th Cir. 2008) (publicly reported stock price), including judicial proceedings, *see Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994) (state court filings); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991) (bankruptcy filings). The public records exception applies in this case, so the Court will consider the filings in Ottinger's bankruptcy case when determining the facts of this case. It will not, however, consider other materials submitted in connection with the motion that are not part of the pleadings or the bankruptcy case.

The relevant events begin with Ottinger's bankruptcy proceeding. She and her husband Terry Ottinger, who is now deceased, filed a voluntary petition under Chapter 13 of the Bankruptcy Code on February 28, 2014. The Schedule B attached to the petition for listing of personal property listed no contingent claims of any kind, and the statement of financial affairs ("SOFA") listed no either debtor had been a party in the preceding year. Less than two months later, Terry Ottinger was in a motor vehicle accident and died on April 23, 2014. Less than two

weeks later, Ottinger filed a suggestion of the death of Terry Ottinger in the bankruptcy proceeding.

On May 25, 2014, Ottinger made a claim for benefits from an accidental death and dismemberment ("AD&D") policy provided to her by her employer and underwritten by defendant Prudential.

In June 2014, Ottinger filed an amended distribution plan and an amended SOFA in the bankruptcy proceeding, and in August 2014, she filed a second amended plan, none of which disclosed or accounted for any claim for benefits from the AD&D policy. The Bankruptcy Court confirmed the second amended plan on August 26, 2014.

In the meantime, in July 2014, Prudential denied Ottinger's claim under the AD&D policy. Ottinger appealed the decision, and Prudential issued a final denial in March 2015. On May 7, 2015, Ottinger filed this lawsuit seeking payment of the benefits she believes she is due under the policy. She did not amend her Schedule B to list her claim for AD&D policy benefits until October 19, 2015.[1] On October 30, 2015, the Bankruptcy Court appointed Ottinger's counsel in this lawsuit to pursue this claim on behalf of Ottinger's bankruptcy estate, and on January 27, 2016, the Bankruptcy Court confirmed Ottinger's third amended plan that accounts for benefits that may be paid pursuant to the AD&D policy.

Prudential now asks the Court for judgment on the pleadings on the grounds of judicial estoppel because Ottinger failed to timely disclose the AD&D insurance policy benefits claim in her bankruptcy proceeding. Ottinger argues that any omission has been cured by amending her Schedule B and by proposing a third amended plan, which has been confirmed since her response

---

[1] Prudential suggests that Ottinger amended her Schedule B because its counsel had made her aware just before filing its amended answer that it would be asserting a judicial estoppel defense. However, since this support for this suggestion is not contained within the pleadings or the public record, the Court does not consider it.

3

to Prudential's motion, and by the Bankruptcy Court's appointment of counsel to pursue Ottinger's claim on behalf of the estate.

**III. Analysis**

The doctrine of judicial estoppel prevents a party from adopting a position in one legal proceeding after having taken a contrary position – and prevailed – in another legal proceeding. *Zedner v. United States,* 547 U.S. 489, 504 (2006). The intent of the doctrine is to prevent a litigant from manipulating the judicial system by taking inconsistent positions when it suits her. *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 547 (7th Cir. 2014). For judicial estoppel to apply, the party's later position must be clearly inconsistent with the earlier position, the court must have accepted the earlier position, and accepting the later position must be unfair. *Zedner*, 547 U.S. at 504. Whether to apply judicial estoppel is within the discretion of the Court. *Id.*

Ordinarily, judicial estoppel will prevent a debtor from manipulating the Court and her creditors by deliberately concealing an asset in a bankruptcy petition, obtaining a discharge of her debts, and then claiming ownership of that asset for her own benefit. *Spaine*, 756 F.3d at 547; *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006). However, where the omission of an asset from a bankruptcy schedule is not deliberately deceitful, judicial estoppel may not be appropriate. *See, e.g., Spaine*, 756 F.3d at 547 (summary judgment not warranted where evidence shows omission from schedule may not have been deceitful because it was corrected through oral disclosure). Correction of an inaccurate bankruptcy schedule to permit the Bankruptcy Court to proceed with full and accurate information about the debtor's assets and financial affairs does not, by itself, suggest the deceit required for judicial estoppel to apply. *Id.* (citing *Ah Quin v. County of Kauai Dep't of Transp.*, 733 F.3d 267, 272-73 (9th Cir. 2013)).

More importantly, the application of judicial estoppel in this kind of situation is designed to protect the Court and the debtor's creditors, not those against whom the debtor has a claim. *Spaine*, 756 F.3d at 547; *see Metrou v. N.A. Mortenson Co.*, 781 F.3d 357, 360 (7th Cir. 2015). Judicial estoppel will not be used to prevent the bankruptcy *estate* from benefitting from the denied asset for the benefit of the debtor's creditors so long as the estate played no part in the wrongful denial of the asset and has not abandoned the asset. *Cannon-Stokes*, 453 F.3d at 448; *see Metrou*, 781 F.3d at 360; *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004). It would be a different story if the estate had abandoned the claim and left the debtor to pursue it on her own behalf. At that point, she would be left with the consequences of any deceptive representations she made in her bankruptcy petition or its schedules. *See Cannon-Stokes*, 453 F.3d at 448-49 (debtor's suit foreclosed by judicial estoppel because Trustee had abandoned her claim).

Applying the foregoing, the Court concludes that the pleadings, supplemented by the judicial record of Ottinger's bankruptcy proceedings, do not allow the reasonable inference that Ottinger's failure to list her claim for benefits under the AD&D policy on her Schedule B until October 2015 was a deliberate attempt to conceal this asset. The circumstances of that omission are not reflected in the pleadings, so the inference of deceit necessary for judicial estoppel to apply is not warranted.

Furthermore, the Court will not exercise its discretion to apply judicial estoppel to deprive Ottinger's creditors of their appropriate share of any recovery the estate may obtain from Prudential by virtue of the AD&D policy. As of right now, Ottinger's debts have not been discharged, the Trustee has not abandoned Ottinger's claim for benefits from Prudential, the Bankruptcy Court has appointed Ottinger's counsel in this case to pursue that claim on behalf of

the estate, and Ottinger's distribution plan accounts for any such recovery. The Court will not apply judicial estoppel to protect Prudential at the expense of Ottinger's creditors.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** Prudential's motion for judgment on the pleadings (Doc. 17).

**IT IS SO ORDERED.**
**DATED:  February 2, 2016**

                                      s/ J. Phil Gilbert
                                      **J. PHIL GILBERT**
                                      **DISTRICT JUDGE**